# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

STEPHANIE ANN BATES,

        Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

        Defendant.

_____/

Case No. 1:23-cv-00999-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.     INTRODUCTION

Plaintiff Stephanie Ann Bates ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.) On April 13, 2026, this case was reassigned to the undersigned. (*See* Doc. 18.)

## II.    FACTUAL BACKGROUND

On July 17, 2020, Plaintiff protectively applied for DIB and SSI payments, alleging she became disabled on January 1, 2019, due to depression, back problems, sciatica, insomnia, and anxiety. (Administrative Record ("AR") 26, 130, 150, 172, 192.) Plaintiff was born in 1961 and was 57 years old on the alleged disability onset date. (AR 129, 149, 171, 191.) Plaintiff completed some college and previously worked as a secretary, auditor, and salesperson. (AR 35, 112, 116, 436–37.)

### A.    Relevant Evidence of Record[3]

#### 1.    Medical Evidence

In June 2017, Plaintiff presented for a mental evaluation by consultative examiner Amber Ruddock, Ph.D. (AR 581–84.) She reported she watches television, uses the computer and reads. (AR 582.) Plaintiff denied needing any assistance with activities of daily living. (AR 582.) She complained of depression and anxiety and denied any psychotic symptoms. (AR 581–82.) On mental status examination, Plaintiff was cooperative with adequate effort, her speech was clear, her and thoughts organized and linear. (AR 583.) Her mood was "irritable" and her affect was congruent with her mood. (AR 583.) Plaintiff "stated in the past she believes she has seen spiritual apparitions," and denied any other history of psychotic symptoms. (AR 583.) Dr. Ruddock found "no obvious psychotic indicators present at the time of the examination." (AR 583.) Plaintiff's memory was "mostly intact" for immediate, intermediate and remote memories, and she could recall three out of three words at immediate and two out of three words at intermediate timeframes. (AR 583.) Dr. Ruddock found Plaintiff's attention and concentration were appropriate, as she could spell the word "table" forward and backwards with no errors. (AR 583.) Plaintiff's fund of knowledge, insight, and judgment were average. (AR 583.)

Plaintiff presented for an initial assessment with the Los Angeles County Department of Mental Health in August 2019. (AR 662–71.) On mental status examination, Plaintiff exhibited impaired memory; tearful, irritable, hopeless/worthless, and anxious mood; impaired concentration;

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

impaired judgment; and impaired insight.  (AR 669.)

In October 2020, Plaintiff presented for another consultative psychiatric evaluation.  (AR 631–36.)  She complained of depression, anxiety, mood swings, anger, short temper, irritability, hyperactivity, restlessness, trouble concentrating, problems with memory, panic attacks, hallucinations, sleeplessness, and pain.  (AR 631.)  According to Plaintiff, she has adequate self-care skills of dressing, bathing, eating, toileting, and taking safety precautions.  (AR 633.)  She does household chores, runs errands, shops and prepares simple meals with a microwave, and her hobbies include watching television, listening to the radio, using a cell phone, napping, visiting her mother and sister, and going to appointments.  (AR 633.)  Plaintiff manages her own money and can go places by herself.  (AR 633.)  She described her relationship with her family as "okay."  (AR 633.)  Consultative examiner Mary Bridges, M.D., observed Plaintiff was cooperative, maintained good eye contact throughout the interview, and was able to establish rapport with the examiner.  (AR 634.)  Plaintiff's mood was described as "generally euthymic, responsive and congruent to thought content," and she was "episodically dysphoric."  (AR 634.)  Dr. Bridges found Plaintiff's affect appropriate, reactive and congruent with mood, and her thought processes linear and goal directed.  (AR 634.)  Plaintiff denied active auditory or visual illusions or hallucinations at the time of the evaluation and also denied paranoid ideation.  (AR 634.)  Dr. Bridges found Plaintiff was able to register three out of three items at zero minutes and two out of three items at three minutes.  (AR 634.)  Plaintiff could subtract serial threes correctly from 21 and 10 in three cycles and was able to spell the word "table" forward and backward on the first attempt.  (AR 634.)  Dr. Bridges estimated Plaintiff's intelligence to be average based on vocabulary, fund of knowledge, and abstractions, and found that she had common sense understandings.  (AR 634–35.)

Plaintiff underwent a psychiatric assessment by the Heritage Clinic in March 2021.  (AR 647–53.)  On mental status examination, Plaintiff exhibited a dysphoric, anxious, hopeless/ worthless mood; unimpaired speech, intellectual functioning, and memory; average fund of knowledge; no apparent perceptual, thought process, or thought content disturbances; and no reported behavioral disturbances.  (AR 652.)  The provider noted that Plaintiff was "intelligent, insightful, and engaged."  (AR 653.)

3

In April 2021, Plaintiff presented for an initial psychiatric medication assessment. (AR 696–99.)  Her mental status examination showed calm and cooperative behavior with appropriate eye contact; normal rate, rhythm, volume, and tone of speech; "depressed" mood; full and appropriate affect; circumstantial thought process; auditory and visual hallucinations with "significant delusional content"; average fund of knowledge; fair insight; good judgment; and intact attention, cognition, and impulse control. (AR 697–98.)

Aurora Doreza, a social worker (SW) with the Heritage Clinic, evaluated Plaintiff in July 2021. (AR 640–42.)  SW Doreza found Plaintiff was cooperative; her memory was normal; her concentration was intact; her intelligence was average; she had no behavior disturbance; her affect was appropriate; and her thought process and judgment were intact. (AR 640–41.)  SW Doreza further found that Plaintiff had an anxious and depressed mood, with reported hallucinations. (AR 641.)

In September 2021, Plaintiff attended a medication management appointment in September 2021.  (AR 702–703.)  On mental status examination, Plaintiff was well-groomed, calm and cooperative, with appropriate eye contact.  (AR 703.)  Her speech was normal and her affect was full and appropriate. (AR 703.)  Plaintiff's mood was "depressed." (AR 703.)  Her thought process was circumstantial, with auditory and visual hallucinations and "significant delusional content." (AR 703.)  Plaintiff's attention, cognition, and impulse control were intact, and her fund of knowledge average, with fair insight and good judgment. (AR 703.)

Plaintiff presented for a mental health consultation in February 2022. (AR 711–13.)  Her mental status examination showed cooperative attitude and normal speech, depressed mood, appropriate affect, linear and goal directed thought processes, and "delusions of reference" with "some possible paranoia." (AR 712.)  She denied any auditory or visual hallucinations. (AR 712.)  Plaintiff was alert and oriented, with intact insight and judgment. (AR 712.)

In March 2022, Plaintiff presented to SW Doreza. (AR 727–29.)  She complained of feeling "depressed, very tired, and overwhelmed." (AR 728.)  SW Doreza indicated that Plaintiff's "mental health symptoms may make it difficult to complete tasks related to maintaining housing (completing paperwork, rent payment, etc.)." (AR 728.)

Plaintiff attended a follow up appointment in April 2022.  (AR 720–22.)  Her mental status examination results were the same as before.  (AR 722.)  Later that month, Plaintiff presented to SW Doreza with the same depressive symptoms.  (AR 730–32.)  SW Doreza again wrote that Plaintiff's "mental health symptoms may make it difficult to complete tasks related to maintaining housing (completing paperwork, rent payment, etc.)."  (AR 731.)

In May 2022, Plaintiff presented for another follow up appointment.  (AR 716–18.)  On mental status examination, Plaintiff's results were the same as before, with cooperative mood, normal speech, "depressed" mood, appropriate affect, linear and goal directed thought processes, and "delusions of reference" with "some possible paranoia."  (AR 718.)  She denied any auditory or visual hallucinations.  (AR 718.)  She was alert and oriented, with intact insight and judgment.  (AR 718.)

### 2.    Opinion Evidence

In June 2017, following her consultative examination, Dr. Ruddock opined that Plaintiff would have no difficulty to: understand, remember and carry out short, simplistic instructions; make simplistic work-related decisions without special supervision; and comply with job rules such as safety and attendance.  (AR 584.)  According to Dr. Ruddock, she would have mild difficulty to: understand, remember and carry out detailed and complex instructions; respond to change in a normal workplace setting; maintain persistence and pace in a normal workplace setting; and interact appropriately with supervisors, coworkers and peers on a consistent basis.  (AR 584.)

Following her consultative examination in October 2020, Dr. Bridges found that Plaintiff has no difficulty maintaining composure and even temperament, and no difficulty in maintaining social functioning.  (AR 635.)  She has mild difficulties focusing and maintaining attention and in concentration, persistence and pace.  (AR 635.)  According to Dr. Bridges, Plaintiff would have no limitations performing simple and repetitive tasks and mild limitations performing detailed and complex tasks.  (AR 635.)  Plaintiff would have no difficulties with performing work activities on a consistent basis without special or additional supervision.  (AR 635.)  Dr. Bridges further opined Plaintiff would have mild limitations completing a normal workday or workweek, would have no limitations accepting instructions from supervisors and interacting with coworkers and with the

public, and would have mild difficulties in handling the usual stresses, changes and demands of gainful employment.  (AR 635.)

On July 6, 2021, SW Doreza completed a "Short Form Evaluation for Mental Disorders," in which she opined that Plaintiff had a fair ability to: understand, remember, and-carry out complex instructions; understand, remember, and carry out simple instructions; maintain concentration, attention, and persistence; and respond appropriately to changes in a work setting.  (AR 642.)  SW Doreza indicated Plaintiff had a poor ability to: perform activities within a schedule and maintain regular attendance; and to complete a normal workday or workweek.  (AR 642.)

Two days later, on July 8, 2021, SW Doreza transmitted a "Statement of Mental Health Impairments," in which she wrote

> [Plaintiff's] symptoms of low motivation, chronic tension, and difficulty relaxing, as well as client's symptoms of PTSD, including flashbacks, intense physical and mental reactions to reminders of trauma, hyperarousal, and hypervigilance make it extremely difficult for her to understand, remember, and carry out complex and simple instructions. [Plaintiff's] symptoms of depression also affect client's ability to maintain concentration and attention.  Due to [Plaintiff's] feelings of sadness, self-isolation, anhedonia and low motivation, she has shown extreme difficulties with adhering to a schedule and maintaining regular attendance to therapy and other appointments. [Plaintiff] is continuously interrupted with psychological symptoms of PTSD and would not be capable of completing a regular workweek without interruptions. [Plaintiff's] ability to respond appropriately to changes in the work setting is impaired by her symptoms of irritability, chronic tension, and difficulties with concentration.

(AR 646.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on March 17, 2021, and again on reconsideration on July 28, 2021.  (AR 26, 218–22, 228–34.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 235–51.)

At the hearing on July 21, 2022, Plaintiff appeared by telephone with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 108–112.)  At the hearing, and in her prior written statements, Plaintiff reported depressive and anxiety-related symptoms, memory problems, difficulty understanding and completing tasks, mood swings and isolation, anger issues and irritability, difficulty getting along with others, difficulty concentrating and paying attention,

and experiencing hallucinations.  (AR 112, 120, 121, 457, 462, 463, 498, 501, 502, 503, 504.)  A Vocational Expert ("VE") also testified at the hearing.  (AR 112–122.)

**C.      The ALJ's Decision**

In decision dated August 11, 2022, the ALJ concluded that Plaintiff was not disabled.  (AR 26–36.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920.  (AR 28–36.)  The ALJ decided that Plaintiff met the insured status requirements of the Act through March 31, 2022, and had not engaged in substantial gainful activity since January 1, 2019, the alleged onset date (step one).  (AR 28–29.)  At step two, the ALJ found Plaintiff's following impairments to be severe: cervical disorder; lumbar spine disorder; right knee disorder; and sleep disorder due to mild neurocognitive disorder.  (AR 29–31.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 20–31.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking 4 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; occasional pushing and pulling; no ladders, ropes, or scaffolds; occasional ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; frequent handling and fingering; and frequent overhead reaching.

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

(AR 31–35.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record."  (AR 33.)

Based on the RFC assessment, the ALJ determined that Plaintiff could perform her past relevant work as a secretary and as an auditor (step 4).  (AR 35–36.)  The ALJ concluded that Plaintiff was not disabled at any time from the alleged onset date through the date of the decision. (AR 36.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 11, 2023.  (AR 5–11.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

### III.   LEGAL STANDARD

#### A.   Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If

> not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ erred in their consideration of medical opinion evidence, failed to articulate clear and convincing reasons for discounting her testimony regarding her subjective complaints, assessed an RFC that was not supported by substantial evidence, and did not properly evaluate new and material evidence submitted to the Appeals Council after the decision. (Docs. 12, 17.)   The Commissioner responds that the ALJ's consideration of medical opinion evidence was appropriate, they properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations, the RFC assessment is legally sufficient, and the decision is supported by substantial evidence even considering the evidence submitted to the Appeals Council. (Doc. 16.)   The Court agrees with the Commissioner and will affirm the ALJ's decision.

**A.    The ALJ Did Not Commit Harmful Error in Considering Medical Opinion Evidence**

**1.    Legal Standard**

Under the regulations regarding the evaluation of medical evidence that are applicable to this case, the ALJ must evaluate the "persuasiveness" of a medical opinion by considering the following factors: supportability, consistency, treatment relationship, specialization, and "other factors."   20

C.F.R. §§ 404.1520c, 416.920c.  In so doing, the ALJ must at a minimum "explain how [they] considered" the supportability and consistency factors, as they are "the most important factors."  *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2).  But if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in their decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c.  *See id*. §§ 404.1520b(c)(3), 415.920b(c)(3).  Additionally, these requirements only apply to the evaluation of medical opinions, and not all statements by medical sources qualify as opinions.  *See generally Hale v. Kijakazi,* No. CV 21-53-H-JTJ, 2022 WL 14654959, at *6 (D. Mont. Oct. 25, 2022) ("An ALJ must discuss statements by a medical source that qualify as 'medical opinions' . . . [but] is not required to address statements by a medical source that do not qualify as medical opinions.") (citations omitted).

   **2.    Analysis**

          a.    SW Doreza's July 8, 2021, medical opinion

It is uncontroverted that the ALJ did not evaluate SW Doreza's July 8, 2021, medical opinion, instead deeming it a "statement[] on the issue reserved to the Commissioner" and thus "neither valuable nor persuasive" in accordance with 20 C.F.R. §§ 404.1520c, 416.920c. (AR 34.) Plaintiff contends the ALJ's characterization of the opinion is incorrect and their failure to consider it erroneous and harmful.  (Doc. 12 at 13–16.)  The Commissioner implicitly concedes that SW Doreza's July 8, 2021, medical opinion contained at least some functional limitations that necessitated evaluation by the ALJ but asserts that such error is "harmless" because the ALJ considered and found unpersuasive SW Doreza's medical opinion given two days earlier, on July 6, which contained the same limitations as those opined on July 8.  (Doc. 16 at 6.)

        The Court agrees with the Commissioner.  The July 8, 2021, opinion is directed to the same functional areas as those contained in the July 6, 2021, opinion, which the ALJ found unpersuasive. (*Compare* AR 642 *with* AR 646.)  Plaintiff does not challenge the ALJ's finding that the July 6, 2021, opinion was unpersuasive.  Because the rationale for rejecting the July 6, 2021, opinion would apply with equal force to the July 8, 2021, opinion, the Court concludes that the ALJ's error in failing to consider it was harmless.  *See Hurn v. Saul*, 798 F. App'x 976, 978 (9th Cir. 2019) ("The ALJ's failure to evaluate Dr. Cunningham's 2012 report was harmless error because the ALJ reviewed Dr.

11

Cunningham's 2014 report, the two reports were substantially the same, and the ALJ's reasoning would apply equally to both reports.) (*citing Molina*, 674 F.3d at 1115–22); *Elam v. Comm'r of Soc. Sec.*, No. CV-19-04773-PHX-ESW, 2020 WL 2611207, at *8 (D. Ariz. May 22, 2020) ("As Plaintiff correctly observes, the ALJ's decision does not discuss NP Butler's March 2016 Medical Assessment.  The Court, however, finds that this error is harmless as (i) the opinions in the March 2016 and September 2017 Medical Assessments are substantially the same and (ii) the ALJ's rationale for discounting NP Butler's September 2017 Medical Assessment also applies to the March 2016 Medical Assessment.").

b.    SW Doreza's March 16 and April 25, 2022, statement

Plaintiff next faults the ALJ for not analyzing the following statement that appeared in SW Doreza's treatment notes dated March 16 and April 25, 2022: Plaintiff's "mental health symptoms may make it difficult to complete tasks related to maintaining housing (completing paperwork, rent payment, etc.)."  (AR 728, 731.)  The Court finds no error in the ALJ's omission because this statement does not qualify as a medical opinion.  By regulation, a "medical opinion" is defined as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . . (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  "Thus, a 'medical opinion' must discuss both a claimant's limitations and 'what [the claimant] is still capable of doing' despite those limitations." *Jessie L. v. Kijakazi*, No. 20-CV-9305-DMR, 2022 WL 2222964, at *14 (N.D. Cal. June 21, 2022) (quoting *Michael H. v. Saul*, 5:20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021)).

Here, the statement at issue does not satisfy the definition of "medical opinion" because it is equivocal and not a finding of necessary functional limitations. *See Bryan Y. v. Comm'r, Soc. Sec. Admin.*, No. 1:23-CV-00319, 2024 WL 1508559, at *8 (D. Or. Apr. 7, 2024) (ALJ did not err in discounting statement that the plaintiff's mental health impairments could "possibly" affect their ability to work because it was "not a medical opinion"); *Holly B. v. Comm'r of Soc. Sec.*, No. 2:19-CV-01782-TLF, 2020 WL 13922934, at *3 (W.D. Wash. Dec. 30, 2020) (statement that the plaintiff's symptoms "could" interfere with her ability to work was "not a definite statement of what, if any, limitations would exist on Plaintiff's functioning in a work environment"). *See also Jorgensen v. Berryhill*, 706 F. App'x 411, 412 (9th Cir. 2017) (ALJ not required to "incorporate into his residual functional capacity" physician's opinion that the plaintiff "may have some difficulty dealing with normal work pressures and changes in a routine work setting due to depression.") (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (upholding the ALJ's rejection of an equivocal medical observation)). As such, the ALJ was not required to consider the persuasiveness of the statement.

**B.      The ALJ Properly Evaluated Plaintiff's Subjective Symptom Allegations**

**1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[5] *Id*. As the Ninth Circuit has explained:

---

[5] The Court rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 16 at 13 n.5.)

The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### 2. Analysis

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective symptom statements as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 33.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Plaintiff contends that the ALJ did not adequately evaluate her claims of mental dysfunction for purposes of formulating her RFC. (Doc. 12 at 20, 21; Doc. 17 at 2.) The Court disagrees. The ALJ assessed Plaintiff's subjective symptom allegations while evaluating the severity of her mental impairments at step two and found that they were inconsistent with the objective medical evidence and her reported activities of daily living. (*See* AR 29–30.) The ALJ again "considered" these allegations in formulating her RFC. (*See* AR 32.) Contrary to Plaintiff's assertion, that the ALJ did

14

not repeat their credibility findings in the RFC assessment portion of the decision is of no consequence, as a reviewing court must look to "all the pages of the ALJ's decision." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022). Here, the ALJ did more at step two than merely reference mild limitations in Plaintiff's mental abilities--the ALJ identified Plaintiff's specific allegations of mental dysfunction and contrasted those with specific examples from the objective medical record and her reported activities of daily living (*see* AR 29–30). *See Williams v. Comm'r of Soc. Sec. Admin.*, No. CV-24-01901-PHX-MTL, 2025 WL 2394653, at *7 (D. Ariz. Aug. 19, 2025) (upholding the ALJ's credibility determination in formulating the RFC based on specific reasons given at step two for finding that the plaintiff's symptoms "were not as severe as alleged"; ALJ "did not just discuss the relevant medical evidence when making his conclusions . . . . He instead compared Williams' testimony to medical and other evidence while evaluating the Paragraph B criteria" at step two); *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("[T]he 'clear and convincing' standard requires an ALJ to show [their] work."). *Cf. Garcia v. Comm'r of Soc. Sec.*, No. 1:21-CV-00068-SAB, 2022 WL 2110709, at *10 (E.D. Cal. June 10, 2022) ("[T]he Court does not find the ALJ's blanket reference to activities of daily living at step four, and limited discussion at step three, to be sufficiently connected to specific aspects of the Plaintiff's symptom testimony, to satisfy the clear and convincing standard. The ALJ never actually linked the medical evidence by identifying which daily activities conflicted with which part of the testimony.").

The Court finds that the two reasons articulated by the ALJ for discrediting Plaintiff's subjective symptom allegations are clear and convincing and supported by substantial evidence, as explained below.

### a.    Objective medical evidence

First, the ALJ considered the extent to which Plaintiff's "depressive and anxiety-related symptoms" were consistent with the objective medical evidence. (AR 29–32.) While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch*, 400 F.3d at 680, 681. *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir.

1999).  "When objective medical evidence in the record is ***inconsistent*** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."  *Smartt*, 53 F.4th at 498 (emphasis in original) (collecting cases); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Here, the ALJ noted that although the medical evidence "[a]t very limited times . . . revealed some abnormal findings" (AR 29), it also documents "generally normal" and "unremarkable" mental status examinations, including by the two consultative examiners.  (AR 29 (citing AR 581–84 (cooperative; clear speech; thoughts organized and linear; memory "mostly intact"; appropriate attention and concentration; average fund of knowledge, insight, and judgment), AR 631–36 (cooperative; good eye contact; able to establish rapport; denied active auditory and visual illusions, hallucinations and paranoid ideation; "generally euthymic" mood; thought content "responsive and congruent"; appropriate affect; linear and goal-directed thought processes; average intelligence), AR 652 (unimpaired speech, intellectual functioning, and memory; average fund of knowledge; no apparent perceptual, thought process, or thought content disturbances; no reported behavioral disturbances), 653 ("intelligent, insightful, and engaged"), 697–98 (calm and cooperative behavior; appropriate eye contact; normal rate, rhythm, volume, and tone of speech; full and appropriate affect; circumstantial thought process; average fund of knowledge; fair insight; good judgment; intact attention, cognition, and impulse control).)  The ALJ explained that despite Plaintiff's "alleged memory problems, difficulty completing tasks, and understanding," at the consultative examinations "her thought process was linear and goal directed, she denied hallucinations, she denied paranoia, she was able to perform serial threes, her memory was adequate, abstract thinking was intact, fund of knowledge was intact, her intelligence was estimated to be average, she had common sense understandings, and insight and judgment were intact/average."  (AR 30 (citing AR 581–84, 631–36).)  While she claimed that she has "mood swings, isolates herself, anger issues, short tempered, irritability, and has difficulty getting along with others," Plaintiff nevertheless reported at the consultative examinations she "socialized with family but denied having friends, she was cooperative with the examiners and was able to establish rapport, she had good eye contact, she was

married for the second time, she had no active suicidal or homicidal ideations, and she had no difficulty interacting with the staff or examiner." (AR 30 (citing AR 581–84, 631–36).) And although she reported "difficulty with her concentration and attention and she has hallucinations," at the consultative examinations Plaintiff's "attention and concentration were intact and appropriate, she denied hallucinations, she was able to perform serial threes, abstract thinking was intact, fund of knowledge was intact, her intelligence was estimated to be average, insight and judgment were intact/average, she was able to recall three out of three items immediately and upon a second registry, and there was no evidence of her responding to internal stimuli." (AR 30 (citing AR 581–84, 631–36).)

Plaintiff does not dispute this evidence. She instead contends that the ALJ "selective[ly] reli[ed]" on it and "disregarded the other objective medical findings in the record pertaining to Plaintiff's mental functioning." (Doc. 17 at 3–4 (citing AR 641, 652, 669, 697, 703, 712, 718, 722).) Review of the ALJ's decision, however, demonstrates that the ALJ did consider this evidence in evaluating Plaintiff's subjective symptom allegations, even if they did not discuss each record individually (*see* AR 29, 31 (citing AR 641, 652, 654–686, 687–708, 697, 709–713, 714–22)). *See Bostwick v. Berryhill*, 677 F. App'x 344, 345 (9th Cir. 2017) ("[A]n ALJ need not discuss every single piece of evidence.") (citing *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)). Indeed, the ALJ specifically observed that some of the mental status examinations "revealed some abnormal findings such as hallucinations, delusions, paranoia, panic attacks, depression, and anxiety." (AR 29.)

Plaintiff is correct that the ALJ must not "cherry-pick" instances of no or low symptomology without considering the context, such as instances of high symptomology. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without considering their context); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett*, 180 F.3d at 1098) (the court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts'). The undersigned does not concur with Plaintiff, however, that the ALJ committed this error. As set forth above and contrary to Plaintiff's contention, the ALJ did not fail

17

to consider the records Plaintiff identifies.  The true gravamen of Plaintiff's challenge to the ALJ's decision appears to be the conclusion the ALJ drew from these records, namely, that they undermined Plaintiff's allegations of mental dysfunction.   Plaintiff may disagree with this conclusion, but the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").  When the evidence is susceptible to more than one rational interpretation, as is the case here, it is the Commissioner's conclusion that must be upheld.  *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas*, 278 F.3d at 954.

The Court finds the ALJ's conclusion that the evidentiary record does not support, and instead undermines, Plaintiff's subjective statements is supported by substantial evidence.  The ALJ's determination that Plaintiff's complaints are inconsistent with the medical evidence is therefore a clear and convincing reason for discounting her subjective symptom testimony.  *See Smartt,* 53 F.4th at 499 (concluding that the ALJ properly discredited the claimant's testimony based on inconsistencies with objective medical evidence).

      b.  <u>Daily Activities</u>

Next, the ALJ made a reasonable determination based on specific, clear, and convincing evidence that Plaintiff's "allegations of disabling mental functional abilities" were inconsistent with her admitted activities of daily living.  (AR 30.)  An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040. Even if the claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Plaintiff reported that she needs no assistance with and has adequate self-care skills of dressing, bathing, eating, toileting and safety precautions; does household chores, runs errands, shops, prepares simple meals with a microwave, watches television, uses the computer, reads, listens to the radio, uses a cell phone, visits her mother and sister, goes to appointments, manages her own

money, and travels alone.  (AR 583, 633.)  Based on this testimony, the ALJ reasonably concluded that it undermined Plaintiff's claim that "depression and anxiety . . . limited [her] ability to work and perform activities of daily living" (AR 32).  *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (the plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas*, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping").

Plaintiff criticizes the ALJ for "merely summarizing [her] activities" without specifying how they contradicted her allegations of mental dysfunction. (Doc. 17 at 3.)  The Court disagrees and instead finds sufficient support in the record to find the ALJ's discussion of daily activities was a clear and convincing reason to give less weight to Plaintiff's complaints, which the ALJ identified as "depressive and anxiety-related symptoms"; "memory problems, difficulty completing tasks, and understanding"; "mood swings, isolate[ing] herself, anger issues, short tempered, irritability, and [] difficulty getting along with others"; and "difficulty with her concentration and attention and . . . hallucinations" (AR 29, 30).  *See Kaufmann*, 32 F.4th at 851–52 ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); *Guthrie v. Kijakazi,* No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) *(*the ALJ sufficiently explained her reasons for discounting the plaintiff's symptom testimony, and "we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman*, 32 F. 4th at 851); *Lopez v. Colvin*, No. 1:13-CV-00741-SKO, 2014 WL 3362250, at *16 (E.D. Cal. July 8, 2014) ("While the ALJ did not explain that Plaintiff's daily activities were ***consistent*** with specific work activity, the ALJ found Plaintiff's daily activities were ***inconsistent*** with the severity of symptoms he alleged . . . [and] [b]ecause Plaintiff's daily activities were inconsistent with the disabling symptoms he alleged, the ALJ properly found such claims not credible.") (emphasis in

original).  *See also Smartt*, 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."); *Lambert*, 980 F.3d at 1277 (The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits."); *Razaqi v. Kijakazi*, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity.  No inferential leaps are required to find the ALJ's reasoning clear and convincing."); *cf. Brown-Hunter*, 806 F.3d at 495 (finding error where the ALJ stated only a general, nonspecific finding regarding credibility after simply reciting the medical evidence).

In sum, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the severity of her limitations.

**C.     The ALJ Did Not Err in Assessing Plaintiff's RFC**

**1.     Legal Standard**

Before proceeding to step four, the ALJ must first determine the claimant's RFC.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(2), 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC); see also 20 C.F.R. §§ 416.927(d)(2), 416.946(c).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews*, 53 F.3d at 1039–40.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record

such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Where a claimant alleges a mental impairment, steps two and three require the ALJ to apply the psychiatric review technique outlined at 20 C.F.R. §§ 404.1520a and 416.920a to determine the severity of the claimant's impairment at step two, and to determine whether the impairment satisfies Social Security regulations at step three. If the claimant is found to have a medically determinable mental impairment, the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s)," then "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Section 404.1520a,]," which specifies four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(b), (c)(3); *see also id*. § 416.920a(b), (c)(3). The four functional areas are known as the "paragraph B" criteria.

The functional limitations are rated on a five-point scale of "[n]one, mild, moderate, marked, [or] extreme," 20 C.F.R. § 404.1520a(c)(4). *See also id*. § 416.920a(c)(4). An impairment causing no more than mild limitations in any area is generally considered a non-severe impairment. 20 C.F.R. § 404.1520a(d)(1); *see also id*. § 416.920a(d)(1). If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine the claimant's RFC. The RFC determination is thus distinct from the psychiatric review technique (and consideration of the "four broad functional" areas) though the discussion often overlaps.

### 2. Analysis

In performing the psychiatric review technique, the ALJ found that Plaintiff had mild limitations in all four functional areas. (AR 20–21.) Plaintiff asserts that the RFC is not supported by substantial evidence because the ALJ did not consider Plaintiff's "well-documented mental

limitations . . . even if they were considered mild." (Doc. 12 at 23–24; *see also* Doc. 17 at 4–5.) This argument is unavailing because there is no requirement that mild limitations be incorporated in the RFC, or that the ALJ must explain the omission thereof. A mild limitation means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Part 404, Subpt. P. App. 1, Listing 12.00(F)(2). Relatedly, where a mental impairment causes no more than mild limitations, the impairment is non-severe (*see* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)), and a non-severe impairment "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922.

Irrespective of severity, all medically determinable impairments are indeed considered when assessing a claimant's RFC prior to step four. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). There is no requirement, however, that the ALJ do so under any particular heading of their opinion, and "[d]istrict courts in this circuit have generally declined to find reversible error when an ALJ found the claimant's mental impairments to be non-severe at step two and considered related, additional evidence of the claimant's mental impairments at step four." *Denney v. Saul*, No. 1:18-CV-00689-GSA, 2019 WL 4076717, at *8 (E.D. Cal. Aug. 29, 2019) (collecting cases).

That is precisely what the ALJ did here. At step two, the ALJ performed the psychiatric review technique for evaluation of mental impairments, found that they cause no more than mild limitations in the four broad categories of functionality, and concluded that the impairments were therefore non-severe. (AR 29–30.) The ALJ considered related evidence again at step four—including "complaints of depression and anxiety" (AR 32) and Plaintiff's "complete medical history" (AR 33)—but declined to include any mental limitations in the RFC. Thus, the ALJ did consider Plaintiff's non-severe mental impairments in reaching the RFC.

In *Woods v. Kijakazi*, the Ninth Circuit found no error where the ALJ assessed mild limitations in two of the four functional categories but included no mental limitations in the RFC. 32 F.4th at 794. In so holding, the *Woods* panel noted that "Woods does not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning." *Id*. The Ninth Circuit found the ALJ's decision procedurally sufficient, even though the ALJ neither accommodated Woods's mild mental

limitations in the RFC nor explained why accommodations were unnecessary. Following *Woods*, this Court has concluded: "Simply put, there is no requirement that mild limitations be incorporated into the RFC." *Stoy v. O'Malley*, No. 1:24-CV-00131-GSA, 2024 WL 4752438, at *5 (E.D. Cal. Nov. 12, 2024).

Plaintiff's brief does not mention this holding in *Woods*—much less explain how it is distinguishable or inapplicable. Instead, Plaintiff relies primarily on the holding in *Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012) (unpublished), the rationale for which the Ninth Circuit observed was "rejected" in *Woods*. *See Alexander v. O'Malley*, No. 23-55213, 2024 WL 612877, at *1 (9th Cir. Feb. 14, 2024); *see also Urzua v. Comm'r of Soc. Sec.*, No. 2:23-cv-2772 EFB, 2025 WL 565624, at *4 (E.D. Cal. Feb. 20, 2025) ("More recently, however, '[o]ther district courts have distinguished *Hutton*, ruling that if the ALJ (1) states that he/she considered whether the claimant's mild metal limitations would cause functional limitations and determined they would not; and (2) substantial evidence supports that determination, then the ALJ's decision must be affirmed on appeal.'") (quoting *Hilda V. A. v. Kijakazi*, No. 5:22-cv-1064 KES, 2023 WL 1107867, at *3 (C.D. Cal. Jan. 30, 2023) (collecting cases)). Like *Woods*, Plaintiff does not identify specific evidence of mental limitations that the ALJ failed to consider in assessing the RFC.[6] Nor does Plaintiff contend that the ALJ erred in failing to find severe her medically determinable mental impairments of mild neurocognitive disorder, depression, and anxiety. (*See* AR 29.) In any event, Ninth Circuit has observed that there is "no authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228–29 (9th Cir. 2009).

In sum, because limitations due to mild mental impairments are not required to be included in the RFC, Plaintiff has identified no error in the ALJ's RFC assessment as it pertains to their

---

[6] As noted above, the ALJ considered Plaintiff's "complete medical history," which includes the records Plaintiff cites in her briefing. (*Compare* AR 33 *with* Doc. 12 at 22–23.) The ALJ also stated that the RFC "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" (AR 30). *See Stites-Mounts v. Kijakazi*, No. 1:22-CV-00630-SKO, 2023 WL 5021086, at *11 (E.D. Cal. Aug. 7, 2023) ("The ALJ specifically noted at the conclusion of his step two analysis that their RFC assessment 'reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.' Although the ALJ did not extensively discuss Plaintiff's mental impairments at step four, they thoroughly discussed the evidence supporting their findings at step two and incorporated them by reference in their RFC analysis. An ALJ is required to discuss and evaluate evidence that supports their conclusion; they are not required to do so under any specific heading.") (citations omitted).

analysis of Plaintiff's mental functioning. *See Brown v. Comm'r of Soc. Sec.*, No. 2:24-CV-02781 DAD SCR, 2025 WL 3470255, at *8 (E.D. Cal. Dec. 3, 2025) (noting courts "have consistently followed *Woods* in finding that ALJs are not required to incorporate 'mild' limitations in the RFC.") (collecting cases). *See also Saul R. v. O'Malley*, Case No. EDCV 23-01232-FWS (AS), 2024 WL 3641041, at *2–3 (C.D. Cal., July 3, 2024) ("the ALJ was not required to include the mild mental limitations in the RFC because, as the ALJ noted, the record did not reflect that Plaintiff's mental impairment caused a significant limitation in his ability to work."). Plaintiff may disagree with the RFC, but the undersigned must nevertheless uphold the ALJ's determination because it is a rational interpretation of the record that is supported by substantial evidence. *See Ford*, 950 F.3d at 1159; *Thomas*, 278 F.3d at 954.

**D.    Even Considering the Evidence Submitted to the Appeals Council, the ALJ's Decision is Supported by Substantial Evidence**

"[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin,* 682 F.3d 1157, 1163 (9th Cir. 2012). *See also Taylor v. Comm'r,* 659 F.3d 1228, 1232 (2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error"); *see generally* 20 C.F.R. §§ 404.970(b), 416.1470(b).   Thus, in light of *Brewes*, this Court will consider the 60 pages of treatment notes from the Heritage Clinic dated from March 2021 through August 2022, which Plaintiff submitted to the Appeals Council and were incorporated into the record (AR 44–103), in determining whether substantial evidence supports the ALJ's decision.[7]

Plaintiff has not shown that these treatment notes warrant remand.  Many of these notes are duplicative of those already in the record, as Plaintiff acknowledges, and were thus considered by the ALJ in the first instance.  (*Compare* AR 44–50 *with* AR 647–53; AR 77–78 *with* AR 727–729;

---

[7] Although it is unclear whether the Appeals Council in fact "considered" these records (*see* Doc. 12 at 26), it is clear that they were made part of the administrative record (AR 44–103), and the Commissioner agrees that they should be considered by this Court in reviewing the ALJ's decision for substantial evidence (*see* Doc. 16 at 21).

AR 79-80 *with* AR 730-32; AR 86–88 *with* AR 696–699; AR 89–90 *with* AR 700–701; AR 91–93 *with* AR 702–704; AR 94–95 *with* AR 705–706; AR 101–103 *with* AR 720–723).  The other "new" treatment notes cited by Plaintiff, while not strictly duplicative, likewise contain statements and reported symptoms that are the same or similar to those already in the record before the ALJ (*compare* AR 61, 63, 66, 68, 70, 74, 82, 84 (Plaintiff's "mental health symptoms may make it difficult to complete tasks related to maintaining housing (completing paperwork, rent payment, etc.)") *with* AR 728, 731 (same); AR 72 (Plaintiff reports she is "still having a difficult time and feeling overwhelmed due to several mental health stressors that were affecting her depressive symptoms") *with* AR 703–704 (Plaintiff reports "depression" and "financial stress with loss of GR and unemployment benefits") *and* AR 712–13 (Plaintiff reports she is "still having, a lot at times, depression [without] any reason" and experiencing "a lot of stressors, which makes depression . . . worse."); AR 76 (Plaintiff reports that she has "recently still been feeling depressed and very tired.") *with* AR 728 (Plaintiff stated that she has "recently still been feeling depressed, very tired, and overwhelmed.") *and* AR 731 (same).

Because the "new" treatment notes are the same or similar to evidence the ALJ already considered, the Court finds that they do not undermine the substantial evidence supporting the ALJ's decision.  Accordingly, remand for consideration of this medical evidence is not warranted. *See Cramer v. Berryhill*, 706 F. App'x 385, 386 (9th Cir. 2017) (finding remand was not appropriate because the ALJ considered limitations similar to those described in the evidence submitted for the first time to the Appeals Council, and properly rejected them, "[t]he same reasoning applies to discredit the new evidence, and substantial evidence continues to support the ALJ's determination"); *see also Santos v. Colvin*, No. CV 13–00967 RZ, 2014 WL 241993, at *2 (C.D. Cal. Jan. 21, 2014) (refusing to remand for further consideration by the ALJ where the newly-admitted evidence "differed little from what was in the record already.").

## V.    CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank

Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:    **May 19, 2026**                    /s/ *Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE